13154

STATE v. MOORER

(158 S. E., 729)

November, 1929.

*Mr. J. C. Hiott,* for appellant,

*Mr. A. J. Hydrick, Solicitor,* for the State.

May 25, 1931.

The opinion of the Court was delivered by Mr. Justice Carter.

The defendant, Dan Moorer, was tried and convicted at the November, 1929, term of Court of General Sessions for Calhoun County, before his Honor, Judge C. C. Featherstone, and a jury, under an indictment charging him with unlawfully having in his possession alcoholic liquor. Upon return of a verdict of guilty, the defendant's counsel made a motion for a new trial, which motion his Honor, the trial Judge, overruled and sentenced the defendant to serve upon the public works for Calhoun County for a period of six months, three months of the term being suspended during good behavior. From the verdict, sentence, and judgment of the lower Court the defendant, upon due notice, appealed to this Court upon three exceptions which we shall consider in the order presented.

## Exception I

The exception imputes error to the trial Judge in overruling defendant's motion for a new trial, based, as alleged, in the exception upon three grounds, to wit:

"(a) In that the evidence did not show that the defendant was the owner of the whiskey or entitled to possession of same (if it was whiskey in the jug).

"(b) In that there was no evidence to show that the contents of the jug was intoxicating whiskey such as it would be a violation of the law to possess.

"(c) In that the evidence showed that the defendant had the whiskey in his possession solely for the purpose of destroying it." ·

So far as the record before this Court discloses, these exact questions were not raised before the trial Judge. All that we find in the transcript of record bearing on the motion for a new trial is the following statement: "At the proper time counsel for the defendant moved for a new trial upon the entire record in the case, one of the grounds being that the evidence did not warrant a verdict of guilty."

But waiving this objection, we cannot sustain appellant's position. There was testimony in the case from which the jury might reasonably draw the inference that the defendant had the right to exercise control over the liquor in question. While the defendant testified that the house, where the liquor in question was seen and found, was occupied by a tenant on his farm, it appears from the testimony that he discovered the jug of whiskey and broke the jug against the house, admitting that he knew it was contraband liquor. It seems that the defendant did not hesitate to exercise authority in breaking the jug. Furthermore, there was testimony to show that the defendant controlled the house in question if he did not live there. The testimony is clear that the house was the defendant's. In connection with the facts to which we have called attention we quote herewith some of the testimony shown by the transcript.

George Tilly, a witness for the State, testified:

"I live in this County, I am constable for Magistrate Bardin at Cameron. I know Dan Moorer, the defendant. He lives about four miles from here in Calhoun County. He is charged with having whiskey in his possession April 6th, this year. On information I secured a search warrant and Sheriff Hill and Bootsey Gaskin went with me to his place to search for whiskey. We drove up in the yard and Sheriff Hill and I went into the house; just as we got in the house we saw him with a gallon jug. It looked like the jug was about

half full. He broke the jug. It smelled like whiskey. We found a pint bottle with a little whiskey in it in a closet. We found some pint bottles in the house which smelled like whiskey.

"Hercules Moorer, a colored woman, and one or two more boys were there. Thomas Moorer was also there. The colored woman lived there. Dan's wife does not live with him. There were several negroes there."

Sheriff Hill made the following statement to the Court:

"I am sheriff of Calhoun County. I went with Mr. Tilly to Dan Moorer's house. We drove up in front of the house and saw these men in the yard and in the house. This was on the 6th day of April of this year. We had a search warrant and Bootsey Gaskin went with us. Dan ran in the house and grabbed a gallon jug partly filled with whiskey and broke it against the corner of the house. I could smell whiskey. There was some empty bottles there, some of them smelled like whiskey. A woman lives at the house. She works for Dan.

"Thomas Moorer and Hercules Moorer were there with the woman. I don't know where Thomas Moorer is. He is supposed to be under bond. I put him in jail."

W. H. Gaskin, in the course of his testimony, made the following statement: "I am the person that they refer to as Bootsey. I went with Sheriff Hill and Mr. Tilly to Dan Moorer's. I started around the house and Dan Moorer jumped out of the window and hit a gallon jug against the corner of the house and broke it."

While the defendant admitted that the house where the whiskey was detected was on his farm and that he controlled the farm, he denied living at this house and said that he stayed with his mother, but he admitted being at the house in question at the time the whiskey was detected; that he saw the officers coming and, seeing the jug that contained the whiskey in the house, broke the jug. The defendant further claimed that up to this time, that is, the time he

saw the officers coming, he did not know that the whiskey was there and when he saw the whiskey he picked up the jug containing the same, and broke it against the house. The defendant also stated that the whiskey was not his and that he did not know to whom it belonged, but that he knew that it was contraband whiskey and that it was unlawful to have it in possession. This, in substance, was the defendant's testimony on the points mentioned. The defendant freely admitted that he wanted to get rid of the whiskey and that he broke the jug as soon as he discovered it. This act of his, however, seems to have occurred after he discovered the officers.

In our opinion the trial Judge very properly submitted the case to the jury, and we think that his Honor committed no error in refusing to grant a new trial. Therefore, this exception must be overruled.

## EXCEPTION II

The second exception imputes error to the trial Judge on account of his charge to the jury in giving certain illustrations to aid the jury in understanding the law as to circumstantial evidence. In overruling this exception we deem it sufficient to state that an examination of his Honor's charge to the jury convinces us that the jury was in no way misled as to the law or their duty and that the defendant was not prejudiced by the illustrations given by his Honor. We also call attention to the fact that no request was made by appellant for a fuller charge of the law on any phase of the case. We are unable to sustain the alleged error.

## EXCEPTION III

The third exception is as follows: "It being respectfully submitted that his Honor, the presiding Judge, erred in charging the jury as follows: 'Circumstantial evidence is just as good as direct or positive evidence where it

is made out according to requirements of law.' The error being that he did not instruct the jury the requirements of law as to circumstantial evidence."

As stated in our consideration of the second exception, the appellant did not present any request to the trial Judge for a fuller statement of the law on any phase of the case, which the appellant should have done if he thought his Honor had not charged the law sufficiently. We wish, also, to add that in our opinion the case did not depend upon circumstantial evidence for, as we view the testimony, there was ample and sufficient evidence of a direct and positive nature to warrant a conviction. Therefore, the exception must be overruled.

It is the judgment of this Court that the judgment of the Circuit Court be, and is hereby, affirmed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES COTHRAN, and STABLER, and MR. ACTING ASSOCIATE JUSTICE JOHN I. COSGROVE concur.